**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 17-CV-80636-MIDDLEBROOKS/BANNON

ARTIER LLC, a Florida Limited
Liability Company, EDUARDO
CASTANEDA, an Individual, and
MARTHA BLANCO, an Individual,

       Plaintiffs,

vs.

CARRE D'ARTISTES SAS, a Foreign
Corporation, CARRE D'ARTISTES
USA CORP., a New York Corporation,
STEPHANIE TOSI, an Individual,
MARINA FAUVEY, an Individual,
PATRICE MARTINEAU, an
Individual, and CHARLOTTE
TROISGROS, an Individual,

       Defendants.
_____/

**DEFENDANTS' CARRE D'ARTISTES SAS'S REPLY TO RESPONSE**
**TO MOTION TO DISMISS FOR *FORUM NON CONVENIENS***
**AND INCORPORATED MEMORANDM OF LAW**

       Defendant Carré d' Artistes SAS ("CDA") through its undersigned counsel, hereby

replies to the Plaintiffs' Response to Motion to Dismiss for *Forum Non Conveniens* (the

"Response"), as follows:

## I.       INTRODUCTION

       After being faced with a well-taken Motion to Dismiss for *Forum Non Conveniens*,

Plaintiffs are attempting to change the theory of their case.  While paragraph 44 of the Amended

Complaint alleges that CDA's representative and Castaneda "agreed on the final revisions of a

new agreement," and attaches a "copy of the new Florida agreement" as Exhibit "A" to the

Amended Complaint, Plaintiffs now contend that this agreement is no agreement at all:

> Any suggestions in pleadings or communications that an enforceable "Franchise Agreement" existed were made in error due to a misunderstanding and/or misrepresentation of French law as told to me by Carre d' artistes and its officers and directors."

Castaneda Dec, ¶ 3.

In a further effort to avoid the application of the mandatory forum-selection clause of the

agreement Castaneda and Blanco signed, Plaintiffs also now contend:

> As discussed in the Declaration of Melanie Rousselet, there is no "Franchise Agreement" with a controlling forum-selection clause. The document relied upon by Carre d'artistes is the parties' "Pre-Contractual Information Document (DIP)" which is required, under French law, to be given to each franchise candidate at least twenty days before the signature of the contract or before the payment of any sum of money. The DIP gives the franchise candidate the information to make his or her own decision on the franchise opportunity. The DIP is signed by the prospective franchisees as merely a receipt and not as an assent to the terms therein.

Response, p. 2.

But Plaintiffs cannot have it both ways. Either, as Plaintiffs allege in their Amended

Complaint, CDA sold them a purported "illegal franchise," without first providing a Franchise

Disclosure Document ("FDD"), or, if no sale of a franchise occurred, then there is no basis for

Plaintiffs claims *as pled* under the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA")[1] or the Florida Franchise Act ("FAA"),[2] both of which Plaintiffs' assert are based

---

[1] "FDUPTA is applicable as the sale of the franchise was made in Florida, the franchisee is in Florida…". Am. Compl., ¶ 79.

[2] "In selling and establishing the franchise, Carre d'artistes violated Section 817.416(2)(a), Florida Statutes." Am. Compl., ¶ 92.

2

upon CAD's sale of a franchise to them.[3]

Plaintiffs appear to be playing a game of "gotcha" with the facts.  Allowing Plaintiffs to now assert that their agreement with CDA is not a binding agreement—but merely "a receipt"—after CDA has prepared its Motion and supporting Declarations would be highly prejudicial to CDA.  The case Plaintiffs filed—and the one they now wish to pursue—are factually at odds. The Court should not be permit this ambush.[4]

### A. Plaintiffs' Claims under FDUTPA and the FAA *Are Not* Severable From Their Franchise Agreement with CDA.

Plaintiffs argue that their claims are severable from the parties' agreement because they are based on conduct occurring prior to their execution of the agreement.  Again, this is argument requires that this Court resolve this issue by ignoring their claims *as pled* in their Amended Complaint.[5] In addition, whether these claims stand independent of the parties' agreement turns on "whether they are barred under Florida law from being separated" from the written agreement. *Pelican Ventures, LLC v. Azimut, S.p.A.,* No. 03-62119-CIV-KLEIN, 2004 WL 3142550, at *16 (S.D. Fla. July 28, 2004). As the Pelican Ventures court noted: "This will turn on two points. First the scope of the clause itself, and second whether the statutory counts are severable" from the parties' written agreement."  *Id.* Here, the forum-selection clause is broad.  Rather than limiting its

---

[3] Notably, Plaintiffs' Declarations make no attempt to rebut that statement in Stephanie Tosi's Declaration that "[o]n December 16, 2016, counsel for Eduardo Castaneda, Martha Blanco and Artier, LLC wrote to Carré d' Artistes SAS to advise that they were *rescinding the Agreement* with Carré d' Artistes SAS. (Tosi Declaration, ¶ 11; D.E. # 34-2 p. 43).  (Emphasis added).

[4] Plaintiffs fail to explain, and Rousselet's Declaration does not address, the fact that Plaintiffs' own Amended Complaint alleges that CDA provided them with a "DIP" for their Florida franchise as early as April, 2014. Am. Compl., ¶ 33.

[5] *See,* Amended Complaint, ¶¶ 13 (Defendants breached a contract in this state; 37 (parties executed their original agreement); 44 (Castaneda and Fauvey agreed to final revisions of a new agreement and attaching copy of "new Florida agreement" as Exhibit "A"); 74 (incorporating all prior allegations into Count I); 79 (FDUPTA "applicable as sale of the franchise was made in Florida"); 90 (incorporating all prior allegations into Count II); 92 (CDA violated FAA in "selling and establishing the franchise").

3

scope to disputes "***arising out of***" the agreement, the clause at issue here requires that "***any dispute relating to this Agreement*** shall be submitted to the exclusive jurisdiction of the Commercial Court of Aix en Provence." (Agreement, § 30; D.E. # 9-1 p. 16). While the *Pelican Ventures* court found that the FDUTPA claim was severable from the guarantee at issue in that action, the facts of this case are more like those in *World Vacation Travel, S.A., de C.I. v. Brooker*, 799 S.2d 410 (Fla. 3d DCA 2001), where the court reversed the trial court's denial of the defendant's motion to dismiss for improper venue. The plaintiffs brought claims under the Florida Anti-Trust Act and FDUTPA in connection with a timeshare contract. The court found that the plaintiffs' claims were not severable from the timeshare contract containing a forum selection clause that required any controversy or dispute involving the contract to be brought in Mexico. *Id.* at 412. *See also*, *Fairbanks Contracting v. Hopcroft*, 169 So.3d 282, 282 (Fla. 4th DCA 2015 (reversing denial of defendant's motion to dismiss or transfer on a single count FDUTPA complaint based of a forum-selection clause in the parties' agreement where the clause applied to "any proceeding relating to" the contract and further explaining that the term "relating to" is broader than a provision that applies only to claims "arising out of" a contract). *Id*. at 284.

Moreover, in addressing the plaintiff's argument that enforcing the forum-selection clause in the face of these statutory claims would violate Florida public policy, the *World Vacation* court disagreed on the grounds that the plaintiffs' claims were not severable from their contract. *Id.* at 412.[6] Such is the case here. *See also, Puerto Rico Surgical Technologies, Inc. v. Applied Med. Distrib. Corp.*, No. CIV. 10-1797 (JP), 2010 WL 4237927, at *3 (D.P.R. Oct. 26,

---

[6] The *World Vacation* court also found that the mandatory nature of the forum-selection clause of the time-sharing agreement applied equally to "the non-signatory defendants due to the fact that the claims arise directly from the agreement, as well as due to the nature of the commercial relationship of the parties as it relates to the agreement itself." *Id*. at 412-413. Notably, Plaintiffs' declarations submitted in support of their Response do not even mention or dispute the binding nature of forum-selection clause on Artier, LLC.

2010) (court found no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clause in case alleging violation of Law 75 and dismissed action). In light of the Supreme Court's directive in *Atlantic Marine Constr. Co. v. United States District Court for the Western District of Texas*[7] to enforce forum-selection clause in all but the most "unusual" and "exceptional" of cases, it is beyond dispute that the unambiguous, mandatory forum-selection clause here is valid and enforceable. *Id*. at 582.

**B. The Forum Selection Clause in the Franchise Agreement is Valid and the Clause is Enforceable under French Law.**

Based upon the Rousselet Declaration, Plaintiffs argue that because Castaneda and Blanco are individuals, and "Article 48 of the civil procedure code in France…provides that a forum-selection clause in a business contract is not applicable if one of the parties are non 'commercants' (dealers)," they cannot be bound by the clause under applicable French law. Rousselet Dec., ¶ 3. However, this argument does not offer Plaintiffs the outcome they seek for two reasons. First, Ms. Rousselet's statements in her declaration are not consistent with the translated version of Article 48 attached to her declaration. Article 48 does not even contain the word "individuals," and instead refers to "traders," a term which is undefined. (D.E. # 46-1 p. 8). In addition, the "Franchising in France: Overview" attached to her declaration makes no mention of French law barring enforcement of a forum-selection clause against individuals. (D.E. # 46-1 p. 21 n. 25). Second, Plaintiffs do not even contest that they are already parties to a prior proceeding filed in France by CDA against them arising out of the very same agreement at issue in this action. Astonishingly, nowhere in the Castaneda or Rousselet Declaration are the prior and pending French proceedings *even mentioned*.

---

[7] 134 S.Ct. 568 (2013).

Nor is the forum-selection clause in the parties' agreement otherwise subject to attack on the grounds of fraud. In *Caribbean Rests., LLC v. Burger King Corp.*, 23 F. Supp. 3d 70 (D.P.R. 2014), a case involving the validity and enforcement of a forum-selection clause within a franchise agreement, the district court laid out the analysis as follows:

> "The general rule is that forum selection clauses are *prima facie* valid." *MARPOR,* 2010 WL 4922693 at *3 (*citing M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In this context, the Supreme Court has held that a party challenging a choice-of-forum clause would need to show 'hat the clause was invalid for such reasons as fraud or overreaching. *Lambert v. Kyser,* 983 F.2d 1110, 1119 (1st Cir. 1993) (citing Bremen, 407 U.S. at 15, 92 S.Ct. 1907). "Any alleged overreaching must be based on something more than the mere fact that the clause was a 'boilerplate' provision printed on the back of a form contract." *Lambert,* 983 F.2d at 1119. Likewise, the fraud exception means that a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.* at 1121 (citing *Scherk v. Alberto-Culver Co.*, 471 U.S. 506, 519 n. 14, 94 S.Ct. 2249, 41 L.Ed.2d 270 (1974).

> *Id*. at 77-78.

Here, the Plaintiffs have failed to demonstrate that the forum-selection clause in the franchise agreement was invalid due to fraud or over-reaching. First, the Plaintiffs themselves procured a translation of the agreement from French to English. Rousselet Dec., p. 4. Second, Plaintiffs do not allege any fraud or over-reaching with respect to the procurement of the forum-selection clause itself.[8] Since Plaintiffs do not specifically allege that the forum-selection clause was part of CDA's purported scheme to defraud, they have not otherwise shown that the clause is unenforceable.[9]

---

[8] In fact, Castaneda's Declaration on this point merely states: "I believe there was a franchise relationship but not a meeting of minds on certain terms including the forum selection clause." Castaneda Dec., ¶ 4. It also bears noting that Plaintiff, Blanco, did not submit a declaration in support of the Response.

[9] Plaintiffs do not otherwise challenge that of the forum-selection clause as permissive or limited in scope.

**C. The Forum-Selection Clause in the Franchise Agreement Would not Deprive Plaintiffs of a Remedy.**

Plaintiffs misstate the test the courts apply in determining whether there is an adequate alternative forum.  The test is whether there is a remedy in the alternate forum, not whether the "same" remedy is available.  *Ballard v. Maco Caribe, Inc*., No. 14-CIV-21670, 2014 WL 4723144, at *2 (S.D. Fla. Sept. 23, 2014) (An alternative forum "is still 'available' even if it does not provide the same benefits as courts in the United States"), *citing Beaman v. Maco Caribe, Inc.,* 790 F. Supp.2d 1371, 1376 (S.D. Fla. 2011).  Significantly, "defendant may usually meet its burden of demonstrating an available forum by indicating it is amenable to service of process or consenting to jurisdiction in the foreign forum." *Id*., citing *Tyco Fire & Security, LLC v. Alcocer*, 218 Fed. Appx. 860, 865 (11th Cir. 2007).  CDA's prior pending proceeding in France demonstrates that the commercial court in Aix en Provence is an adequate alternate forum for Plaintiffs' proceedings where CDA is amenable to process.  Menguy Dec., ¶ 7, D.E. # 34-1, p. 2.

**D.  Private Interest Factors are Irrelevant.**

When Plaintiffs agreed to the valid mandatory forum-selection clause contained in the agreement they signed, they "waive[d] the right to challenge" venue in France as "inconvenient or less convenient for [it]self or [its] witnesses." *Atlantic Marine,*  134 S.Ct. at 582.  As such, private interest factors "weigh entirely in favor of the preselected forum" as a categorical matter. *Id.*  For this reason, this Court "*must* deem the private-interest factors to . . . favor the preselected forum."  *Id.* at 581.  Instead, this Court "may consider arguments about public interest factors only." *Id.* [10]

---

[10] Even were this Court to consider these factors, they weigh in favor of dismissal.  As an initial matter, Plaintiffs assert that "there will be relatively few witnesses outside the parties."  Response, p. 13. However, at this stage of these proceedings, the majority of the parties—and all of the Defendants— reside or are situated outside of Florida, mostly in France. In addition, while Plaintiffs indicate that they intend to have testimony from a forensic accounting expert located in Florida, the time for Plaintiffs to

**E.  Public Interest Factors Support Transfer of the Case to France.**

In deciding *Atlantic Marine,* the Supreme Court observed that public interest factors "rarely defeat" a *forum non conveniens* motion.  *Id.* at 582. Although Plaintiffs rely on *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097 (11th Cir. 2004), that case is distinguishable because it did not involve a mandatory forum-selection clause.  In addition, the prior pending proceedings in France between CDA and the Plaintiffs (which Plaintiffs' Response ignores), underscores France's interest in these parties' dispute, especially the protection of French companies and, moreover in this particular case, the many artistes affected by Plaintiffs' retention of their artworks without payment.  (D.E. 34-1, pp. 31-42).  Also, while given limited weight, court congestion is nonetheless a factor.  *Barilotti v. Island Hotel Co.,* No. 13-23672-CIV-MORENO, 2014 WL 1803374, at *1 (S.D. Fla. May 6, 2014).

Moreover, since French law will apply to the dispute, the courts of France are better-suited to apply their own law.  *Jiangsu Hongyuan Pharm. Co. v. Di Global Logistics, Inc.*, 159 F. Supp.3d 1316, 1328 (S.D. Fla. 2016) (finding agreement's requirement of the application of Chinese law was a public factor favoring dismissal).  Finally, while Plaintiffs suggest that CDA has not demonstrated that Plaintiffs can reinstate their action without prejudice in France, their suggestion is predicated upon their argument that they cannot obtain a remedy under FDUTPA and FAA in France.  Again, that is not a correct statement of the test.  "Courts need ask 'only whether some remedy exists; whether the remedy afforded is less favorable in the foreign forum is not determinative.'"  *Jiangsu Hongyuan,* 159 F. Supp.3d at 1329, *citing Neuralstem, Inc. v. ReNeuron, Ltd.*  365 F. Appx. 770, 771 (9th Cir. 2010).  While Plaintiffs might suffer some

---

have identified and provided their expert witness lists and reports passed on August 7, 2017 without a request for this Court to extend that deadline. (D.E. # 13 p. 5).

inconvenience in restating their suit in France, they had not demonstrated that they will be prejudiced in doing so.  Accordingly the public factors here counsel in favor of dismissal.

## CONCLUSION

The Supreme Court is clear that "a forum-selection clause [must] be 'given controlling weight in all but the most exceptional cases.'" *Atlantic Marine,* 134 S. Ct. at 579. This case does not meet the exceptionality test, and for this and other reasons discussed above, Plaintiffs have failed to meet their burden to overcome the application of the forum-selection clause at issue here.  Accordingly, this case should be dismissed on the grounds of *forum non conveniens.*

WHEREFORE, Defendant Carré d' Artistes SAS respectfully requests that the Court enter an order dismissing the Amended Complaint brought against it by the Plaintiffs, together with such further relief as this Court deems just.

Dated: October 6, 2017

FOLEY & LARDNER  LLP

2 South Biscayne Boulevard
One Biscayne Tower, Suite 1900
Miami, Florida  33131
Tel: 305-482-8400
Fax: 305-482-8600

By:   *s/Mary Leslie Smith*
Mary Leslie Smith
Florida Bar No.  774243
mlsmith@foley.com

4839-2426-7089.1

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 6th day of October, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>*s/Mary Leslie Smith*</u>
Mary Leslie Smith

10

4839-2426-7089.1